Troy Darin Zimmerman BK#1600331082
**Name and Prisoner/Booking Number**

Pima County Jail 1-G-42
**Place of Confinement**

P.O. Box 951
**Mailing Address**

Tucson AZ, 85702
**City, State, Zip Code**

(Failure to notify the Court of your change of address may result in dismissal of this action.)

FILED ☑    LODGED ☐
RECEIVED ☐    COPY ☐

SEP 20 2017

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Troy Darin Zimmerman,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) Pima County, Arizona; Municipality,
(Full Name of Defendant)

(2) Clarence W. Dupnik; Former Pima County Sheriff

(3) Mark D. Napier; Pima County Sheriff

(4) David J. Tarnous; Former Pima County Sheriffs Deputy,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV17-00178-TUC-RM
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

"Jury Trial Demanded"

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: _____

2. Institution/city where violation occurred: Tucson / Pima County

Revised 3/11/16         1         550/555

## B. DEFENDANTS

1. Name of first Defendant: __Pima County, Arizona__. The first Defendant is employed as: __a Political Subdivision__ at __State of Arizona__.
   (Position and Title)                                      (Institution)

2. Name of second Defendant: __Clarence W. Dupnik__. The second Defendant is employed as: as: __Former Sheriff__ at __Pima County Sheriffs Department__.
   (Position and Title)                                      (Institution)

3. Name of third Defendant: __Mark D. Napier__. The third Defendant is employed as: __Current Sheriff__ at __Pima County Sheriffs Department__.
   (Position and Title)                                      (Institution)

4. Name of fourth Defendant: __David J. Tarnow__. The fourth Defendant is employed as: __Former Burglary Detective__ at __Pima County Sheriffs Department__.
   (Position and Title)                                      (Institution)

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?  ☒ Yes  ☐ No

2. If yes, how many lawsuits have you filed? __1__. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: __Troy Darin Zimmerman__ v. __Pima County, et al.__
      2. Court and case number: __CV 16-00753-TUC-RM (District Court)__
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) __Still Pending__

   b. Second prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) _____

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

2

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: **13th Amendment Involuntary Servitude**

2. Count I. Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: ☒ Involuntary Servitude

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

On January 22nd 2015 The Plaintiff was released from the Department of corrections (Arizona). The Plaintiff took classes and became a certified renovator. and He Became employed by JTG-Painting company. In Late Febuary or early March a female Deputy for the Pima county Sheriffs Department Questioned all the different worker's providing their services To a Town Home-Association. In the Area of Mountain Quail Road and Covey Drive a residential neighborhood in Tucson, Arizona. The inquiry made by said Deputy was regarding a alleged burglary in the neighborhood. The plaintiff's name was taken down along with all the other worker's in the neighborhood and the Deputy advised everyone that the list would be provided to their Burglary unit.

A week or so later an older man that appeared to be a Detective immediately apparent due to his attire and Badge on his hip. The Detective approached the Plaintiffs vehicle at the end of the workday while he was loading up his work tool's and getting ready to leave for the Day. The area of the vehicle and this incident put the plaintiff roughly in the middle of this particular neighborhood. Right by the Town Home Association's neighborhood Pool. The Detective came walking from around the other side of the pool that is hidden from this side of the pool due to the wall around the pool and is accessible;
(Cont. 3-A)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
extreme emotional distress, Loss of wages, Defamation of character

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☐ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☐ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☐ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.

(cont) from another street in the neighborhood. The Detective later on identified as a Former Pima County Sheriffs Department Burglary unit member Detective David J. Tarnow, asked the Plaintiff if he was "Troy". The Plaintiff who was still packing away his work tools a gear said, "Yes I am". Mr. Tarnow told the Plaintiff he looked older and asked how he has been and if the work was steady. Plaintiff began to focus on Mr. Tarnow and observed his attire. He made clear eye contact getting ready to address whatever the reasoning for his presence and questioning him like they knew eachother. (All the Plaintiff's car doors and trunk were open) Mr. Tarnow reached right into the Driverside Door and pulled a light brown leather case out that was clearly visible. The Plaintiff concedes it was obvious that it was a gun case or holder due to it's shape. Mr. Tarnow looked to the Plaintiff with a "exaggerated" with his eyebrows arched, "I wonder what this is", look. The Plaintiff was told to have a seat and nod his head towards the Driver seat. As the Plaintiff was nearer to the trunk of the vehicle he came around and proceeded to the Driver Door and sat down. He had his feet outside the vehicle so he was facing Mr. Tarnow. Plaintiff was so shocked and unable to think of anything but could only stare at Mr. Tarnow. Mr. Tarn just stood there for what was probably a minute or so making eye contact with the Plaintiff. Plainti was transfixed on Mr. Tarnow's eyes waiting for him to do something. He asked Plaintiff he knew any thing about the burglary across the street and nodded towards the residence that was allegedley Allegedley Burglarized. Plaintiff was not able to answer for a moment and as he started to fumble for words Mr. Tarnow made a verbal "TSK..TSK...TSK" sound while shaking his head and commented on how, (quote), "This little case probably carries another Bid". Mr. Tarnow un-zipped the case and made a gasping sound as if he was in shock at seeing the pist enclosed in the case.

Mr. Tarnow stared at the Plaintiff while simultaneously zipping the case closed again. He flipped the case through the air right at the Plaintiff onto his lap. The whole time Mr. Tarnow was smiling. Mr. Tarnow then pushed his sunglasses back down over his eye's. He started to say som thing about the burglary and instead said, "nevermind, you know what... I'll be seeing you arounc troy and we will talk". Then he walked back around the pool area out of sight.

The Plaintiff immediatley ran to the "POD" that his employer kept on-site to hold the company's supplies for that job site. He placed the case with the pistol under the "POD" so he no longer had it in his car. The Plaintiff's mind was racing thinking he was gonna get pulled over on his way home. He did not see Mr. Tarnow again that day.

A few weeks or so went by (plaintiff is giving rough estimations on timeline) The Plaintiff was at his residence located at 3151 E. Monte Vista Drive, Tucson, AZ. Plaintiff was in his Alley/ Driveway at said residence in the late evening around 8pm. but no later then 10pm.. He was outside in a spot he frequented nightly to smoke marijuana in his own secluded area. Plaintiff was totally occupied with his full attention on making a Home-made smoking device out of a paper towel insert. He had his Pandora App playing music on his smartphone that was sitting on a old television that was basically utilized as a makeshift table.

Out of nowhere it seemed, the Plaintiff was flashed in the face with a very bright light that immediatley startled him. He was temporarily blinded and scared out of his wits. He jumped back and upwards and was shocked to see the light flash another face. Former Detective David Tarnow was standing there with a evil looking grin and started to laugh. He told the Plaintiff, "I'm not here to bust you for Pot Troy". "I actually need your help and I figure you owe me one". Plaintiff knew this was not a chance encounter. Mr. Tarnow took advantage of the Plaintiff's

(cont.) 3-B

3-A

(cont.) music coming from his smartphone and his focus on what he was doing Mr. Tarnow was able to sneak right up on him in the Dark Alley/Driveway.

The Plaintiff was contemplating on running, But obviously Mr. Tarnow knew exactly what he was Doing and the why was Quickly apparent. Mr. Tarnow was soon making small talk that the plaintiff could only barely comprehend as to he was in absolute shock and terrified at this most Bizzare and unreasonable situation. Mr. Tarnow continues right into explaining this, what appeared to be a scheme he had going with police Auctions. Plaintiff's wits started to focus listening to Mr. Tarnow explain what police Auction's consisted of. He told the plaintiff to hold any questions and laughed at his own comment. He told him that he had a inside man and did not pay the actual Bid's he was making. The Issue and Where the plaintiff come's in with his favor and that due to his Job he couldn't "Hock" the amount of Jewelery the plaintiff could. That unlikely but possible someone could make a connection that didn't need to be made. He told the Plaintiff, (Quote) "You can help me, Help you, Help me", or along those lines in that kind of variation. He advised the Plaintiff to keep a third of the profit he wasn't a total sleaze and to get the most possible for the Item's. He described Jewelery Items worth, while referencing a Blue Ziplock freezer bag with a assortment of Items in it. The Whole conversation was more of a Directive oriented affair. Mr. Tarnow's Badge and service weapon were clearly on Display also.

Plaintiff was Bewildered and trying to soak it all in. His thought process was stuck on "this has got to be a set-up". Mr. Tarnow pulled out a plastic insert like one from inside a new cell phone Box. Inside the insert was a phone and a charger. Mr. Tarnow pulled out a knife and busted the camera on the phone. The Plaintiff switched from thinking this is a set-up to this is sounding real Dangerous and "maybe" a set up. Mr. Tarnow told the Plaintiff he would contact him and would expect him at this spot within minute and he would know if he was home. Mr. Tarnow set the phone and Ziplock bag of Jewelery down on the Broken Television where Plaintiff's smartphone was laying playing music out loud. He advised that he knew rough ████ total's of what he expected the Plaintiff to sell the Jewelery for and that Mr. Tarnow would contact him to collect payments.

The Plaintiff's first and only question was, "What do I call you". Mr. Tarnow seemed to be amused by that and told him "It's probably better you Don't know my name and we will only be hanging out to conduct business right here". He advised the plaintiff that he knew the plaintiff's Day's would be busy and wouldn't expect him to Drop everything to meet him. Mr. Tarnow said that's why he will contact him in the evening. Mr. Tarnow ended the encounter saying that he will see him soon and started walking Down the alley towards Presidio Road and took a left towards country club Road and disappeared. Plaintiff's thought process was in total disarray.

About a week went by and Mr. Tarnow called in the evening to ask the Plaintiff how thing's were going. The Plaintiff didn't do anything with the Bag of Jewelery because he had all kind's of question's that he wasn't able to even think about the last encounter. Plaintiff advised Mr. Tarnow that he didn't know where to go beside's the obvious places like pawnshops and that made him ████ sketched out. He told Mr. —

3-B                                                                (cont. 3-c)

(cont.) Tarnow that honestly he was sketched out about this whole situation and for the last week told himself that this isn't really going on. In total Denial and disbelief. Mr. Tarnow laughed and told the plaintiff to calm down every thing was going to be fine and that **"He was the cops"** and that this part of his operation was Legit. The plaintiff told him that he would go to the shops after work and Mr. Tarn advised him that Pawn shops gave a low percentage of the actual worth of the Item Mr. Tarnow said, "that's why I ran down the usual cost of specific Jewelery," because the plaintiff would have to negotiate like he knew what he was talking about. Plaintiff asked him if he was suppose to, "Like save reciepts or some thing." Mr. Tarnow told him very seriously, "I know you won't lie to me and we will have good Business." **There was a tone to Mr. Tarnow's voice that scared the Plaintiff**

Plaintiff started going to pawn shops and gold and silver exchange. He realized how easy it was. He saved all the money and was not able to shake the feeling that this was unreal and had to be some sort of setup. Mr. Tarnow called again a week later and told him to be outside. Plaintiff brought all the money outside and met Mr. Tarnow. Mr. Tarnow told him to keep a third very serious. He said you keep it and use it for your family that way I know your not selling me out. For some reason that some what put the plaintiff at ease, **Part of Mr. Tarnow's trickery**

Mr. Tarnow gave the plaintiff another Bag of Jewelery and a Mountain Dew can that wasn't what it seemed. It had a false bottom with a Hollowed out inside. Mr. Tarnow advised him to put the money inside and told him to place the can in a spot that was not in plain view. He told him when he called and hung-up that meant to do a "Drop" of the can in that spot they determin. He told the plaintiff no point in meeting everytime and that the plaintiff could retrieve the can the next day. This transaction was consistant and frequent. Usually once or twice a week. Mr. Tarnow would deliver a new bag roughly every couple weeks sometime's sooner. He would bring other Item's as well such as old currency or other Antique Item's. One time Mr. Tarnow gave the plaintiff a Bottl of Percocet prescription pills. Roughly 400 tablets with a street value of $10 to $15 dollars a tablet. He advised the plaintiff he did not want anything for them. Mr. Tarnow seemed very pleased with the plaintiff. The plaintiff began to get comfortable after seeing that he was able to use the extra income and did not get in trouble. He believed Mr. Tarnow's explanation of the police Auction scheme. This went on for months. **Mr. Tarnow's trickery took advantage of Plaintiff.**

But everything wasn't as it seemed and the Plaintiffs life at home was made difficult because of this ordeal. The Plaintiff's Fiance was concerned an constantly questioned him. Plaintiff was unable to explain what was really going on so he let his Fiance assume the Jewelery and phone was tied to the prison gang Issue the plaintiff had in prison. He told his Fiance not to worry about it and he had to do it, that he had no choice. That he was just helping out and was making the Drama go away so he didn't have to look over his shoulder. That it was

3-C                                    (cont. 3-D)

(cont) For their safety, she let it go and the extra income helped to smooth out the arguments for awhile. The answer combined with the money somewhat bought peace at the plaintiffs home. **The Plaintiff was totally Brainwashed by Mr. Tarnow.**

Some time in early June 2015, the Plaintiffs fiance started up again with the arguments. She wasn't naive and afraid of the plaintiff getting into trouble he barely returned home. As to he went to adult prison when he was seventeen years old. His fiance turned the mere concerned questioning into flat out arguments calling the plaintiff a Liar and demanding for the truth. Demanding that he "Stop whatever weird crap" he was doing or she was gonna leave him with his daughters. That she was not gonna just sit by and be quiet because of a little money. "What happens when he is gone again and He didn't care about them". The Plaintiff started to actually think about what was really happening.

The Plaintiff felt he was in a unreasonable situation. He Love's his family that's why he was working and became a certified renovator. Plaintiff submitted to Mr. Tarnow's Authority for months now. Plaintiff felt trapped and started to freak out mentally. He started questioning what was really going on. What if this was a set up the whole time. What if it's not and what if this cop is gonna make him disappear when he was done with him. Plaintiff contemplated telling someone for all of one minute. He figured Mr. Tarnow would know and he would hear it on a radio or in some type of briefing. As to he would have to try and set him up to get something on him. He didn't even know his name. He knew one thing for sure; Mr. Tarnow is not stupid. He could simply shoot him and say the plaintiff had a weapon. All of the fight emptied out of him. He was simply trapped; **By Mr. Tarnow's Superior Position.**

The Plaintiff got the courage and concocted a plan to non-chalantly ask Mr. Tarnow, "How long do I got to do this for you". So Mr. Tarnow came to bring another bag the plaintiff simply asked him. Mr. Tarnow's whole demeanor changed and he said (quote), "I never made you do anything". Plaintiff told him jokingly, "I didn't really have a choice did I". Mr. Tarnow questioned him, "what's going on, the money isn't good or what". Plaintiff told him about the issue with his fiance and how he can't tell her anything and, "She thinks I'm involved with people from prison and I'm going to get in trouble". Mr. Tarnow asked him point blank, "does he want to stop or what". Plaintiff told him if he could finish this last bag. ████████████ That he didn't want to lose his family. Mr. Tarnow said (quote), "There is always options Troy". That was the end of that encounter. **Plaintiff Felt the mistake.**

The plaintiff was not contacted by Mr. Tarnow again for possibly three weeks. During that time Plaintiff was freaking out. He felt like something was going to happen him. He was constantly looking over his shoulder and at night was jumping at every little sound. The Plaintiff would even brace his door's to his residence with his kitchen chairs braced under the handle's to make them sturdier against forced entry. The Plaintiff was greatly disturbed. He did not know exactly what to make of Mr. Tarnow's silence. On one hand he thought of some kind of setup and on the other hand he wondered if

3-D                    (cont. 3-E)

(cont.) Mr. Tarnow thought he knew to much and was a loose end. The Plaint. has acted naive but he wasn't stupid. He knew this relationship he had with Mr. Tarnow wasn't like a regular one and it was based off of Mr. Tarnow throwing a pistol back at him that he wasn't suppose to have as a felon. They weren't friends.

Around July 4th 2015, Mr. Tarnow finally contacted the Plaintiff. He told him he was busy and wanted him to do one last bag for him. He provided the bag and questioned the Plaintiff again about why and then said it was probably best to stop. He acted friendly and seemed very acceptive of the situation. A total reversal from the previous encounter. The Plaintiff was put at ease and consoled to himself that he did a lot for Mr. Tarnow and everything was going to be alright. The Plaintiff tried to recollect and summarize the entire interaction with Former Detective David J. Tarnow; to the best of his ability.

The Final and Last time the Plaintiff seen him community was when the Pima County Sheriffs Department along with Mr. Tarnow raided the plaintiff's residence with the S.W.A.T. team. They were executing a non-dangerous-low risk Search warrant. The Plaintiff was in custody at the Pima County Jail and attempted to commence in a free-talk with the Pima County Attorney's office. He even signed an agreement. He was going to identify the corrupt cop who gave him all the High-end jewelery they seized from his residence, (The sheriff's department were not able to connect any of the Jewelery to any victims) That plaintiff said he could pick him out of a line-up of all the officers at his residence as he did not know his name. For some reason that agreement was pushed aside and for nearly a year and a half the Plaintiff had to go through multiple criminal lawyers as to no on wanted to address the issue and the District Attorney assigned to the plaintiff's criminal case's was avoiding it also. They even took Mr. Tarnow off of the state's witness list. yet still they would not address the personal relationship or his involvement in the investigation, search and arrest of the plaintiff. Avoided it altogether.

Finally after Plaintiff was able to get new counsel, was the issue of this corrupt cop addressed. Immediatley the Head of the criminal Division for the Pima County Attorney's office Kelli Johnson (now a Judge) commenced a Free-Talk regarding the Plaintiff relationship David J. Tarnow. A Task-Force put together by Kelli Johnson for the sole purpose of Mr. Tarnow's corrupt activity attended the Free-Talk. Plaintiff on record told the whole story. The story was investigated and Roughly 45 day's after Plaintiffs counsel in his criminal case's advised him Kelli Johnson believes him and, "offers a reduced plea", Because of this. The Plaintiff was given a reduced plea. The Plaintiff was told Mr. Tarnow was already going to prison so he got what he had coming. So the issue is resolved. The plaintiff thinks otherwise and is currently litigating this issue and other one's. The Plaintiff still has not recieved brady compliance or anything but "We are sorry, here is a plea".

Mr. Tarnow's use of his position and the Plaintiffs status as a convicted felon and implied that through coercion of law that the Plaintiff owed Mr. Tarnow a "favor". Selling items given to the Plaintiff and telling h to sell them, together with First-encounter of Mr. Tarnow finding a firearm in possess of a Prohibited possessor.

3-E

## COUNT II

1. State the constitutional or other federal civil right that was violated: ~~Abuse~~
Due Process 14th Amendment Abuse of Due process.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: ~~illegible~~ Failure to Supervise/Prior Policy

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

June 29th through July 14th 2015, The Pima County Sheriffs ~~Department~~ was conducting a Investigation against the Plaintiff for Two non-Dangerous residential Burglaries. The cases were Incident #150629333 which resulted in CR-2015-2952-001. A member of Said Departments Specialized Burglary unit who was part of the unit investigating was Former Detective David J. Tarnow. (Same Defendant named in Count 1). Mr. Tarnow was criminally Indicted on the following Felony charges; one count of theft by extortion, three counts of trafficing in stolen property, too counts of Fraudulent Schemes and artifices and one count of Felony theft. Mr. Tarnow is now currently serving a Prison Sentence in the Arizona Dept of corrections after signing a guilty plea Agreement. Mr. Tarnow was Investigated and for his criminal misconducts while on duty of Stealing out of the evidence room and pawnshops. He would Fabricate and alter evidence/documents to accomplish Stealing for a finacial gain. He was originally investigated from a complaint originating from way Back in 2011. His deceits and Specifically the one's specified in this complaint are the only one's that are public knowledge and only came out after Former Sheriff Clarence W. Dupnik was out of office. The new sheriffs were to "Clean House" (Former Sheriff Chris Nanos) were ultimately involved in even more corruption and Scandals within the Department. The current (Sheriff Mark D. Napier) is ~~tasked~~ Plagued with the same. Mr. Tarnow was charged and his misconduct's finally came to light. Well only specified actions of the corruption in the Burglary unit.
(Con't.) 4-A

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
extreme emotional distress, Loss of wages, defamation, loss of Liberty
Anxiety, Humiliation, embarrassment.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☐ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☐ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☐ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.

4

(cont.) were released to the public. Not even two weeks after being apart of the Burglary units investigation, search of plaintiffs residence and arrest Mr. Tarnow fled the state to California. He was brought back and booked into the Pima County Jail. Former Sheriff Clarence W. Dupnik was aware of Mr. Tarnow and him being complained about and investigated for criminal misconduct while on the job. He was stealing evidence while sworn as a Peace-officer. The Internal Affairs Investigation did not just turn up overnight and out of nowhere. The limited access to information still point where a reasonable person could conclude that under Former-Sheriff Dupnik there was a whole list of corruption that rolled right over into the next two administrations.

The Plaintiff will state that on July 14th 2015, the Pima County sheriffs Departments administration and County officials were aware to some extent on Mr. Tarnows criminal misconducts. Thirteen Day's Late on July 27th 2015, not even two weeks, Mr. Tarnow fled the job because they knew about all his scheme's and were on his heels. Simultaneously administrations were changing and campaign promises were to clean up corruption within the Department. Not only Did Former Sheriff Dupnik fail to properly supervise Mr. Tarnow, but the whole investigation into his criminal misconduct was improperly handled. Mr. Tarnow was still able to act as a government agent (Instrument) and spread his Deceit to all criminal investigations he was apart of. Also his access and presence to the evidence locker where "All" evidence is held is compromised. Not one person can say what was or what wasn't. For 15-years Mr. Tarnow was with the Department and was recognized 27 times from citizen and Department leaders in appreciation for his professional and diligent work performance. So obviously he was very clever and had everyone fooled. This wasn't like a one time thing or was even only recently. The whole investigation supposably according to the shoddy information provided to the public was from Back in 2011. It at least dates back to that. He was a officer until mid 2015. Who can vouch for him and who can claim to know if he did or didn't corrupt the whole evidence locker and every case he was apart of. Any case he had access to; it's evidence is compromised. He was sent to prison for messing with and stealing evidence out of the evidence locker. His misconducts were not for a want of a advantage in case's or laziness. His misconducts with evidence were motivated by money, For a Finiacial gain.

There was no reasoning to let that man stay on duty and get away with this for years. He was trusted to investigate and charge people for the same kind of crime he was committing. Mr. Tarnow was nothing more then a super-criminal and enabled by Former Sheriff Dupnik and the County. The sheriffs previous policy enabled Mr. Tarnow to have free-reign in the evidence room. Mr. Tarnows misconducts were so serious that the Department had to change their prior policy that was in place regarding access to the evidence locker. The prior policy possibly destroyed any credibility or validation in every piece of evidence in that locker. The "new" policy created specifically because of Mr. Tarnows misconducts makes any officer with need of access to the evidence locker requires a warrant from a Judge to access evidence.

The Former Detective was a big part of the Burglary unit and a big part of the investigation into the Plaintiff. Mr. Tarnow specifically responded to pawn shops and attempted to identify evidence in the criminal investigation. He handled and processed evidence at a pawnshop used again the plaintiff. Also the Plaintiff has some pawn slips and still-shot pictures from surveillance video. The Pictures show exactly what time the plaintiff was there. The Pawn slips have electronic time stamps that are obviously altered and inconsistant with the video footage. One slip said the plaintiff signed it "45" minutes before he was there at the shop and the second slip said that he signed after he left the shop. Both slips were signed at the same exact time and neither were the time's on those slips. The Pawn Shop uses a process/system that creates electronic business documents that state specifically they are accurate and can be used in court.

The Former Detective called the plaintiffs parole officer and told him that plaintiff was found in possession of a Gold Bracelet with Diamonds inlaid; Belonging to a victim that he was being investigated for. That was a blatant lie without one shred of truth. There was no such Bracelet found or placed into evidence in any case against the plaintiff. Also there is no

(cont.) such victims. As soon as Investigation was over a warrant was issued for Plaintiffs Arrest by the Arizona Department of corrections for a Parole violation. The violation was for Violating Conditions #5 Being in the possession of a gold Bracelet with diamonds inlaid. That Lie was told in a Formal setting where a warrant was issued off of that information.

    Mr. Tarnow Fabricated Finger print evidence to lead his teams (unit) cases. The Fingerprint created a lead and foundation to go at the plaintiff. Plaintiff's one thumb-print was allegedly found at two different crime scenes. Plaintiff's prior relationship with Mr. Tarnow (addressed in count 1) is the reason Mr. Tarnow used his knowledge and expertise as a Burglary Detective to set the plaintiff up. He had access to Plaintiffs fingerprints easily and frequently from the False Bottom Soda can talked about in count 1. Without the two thumb prints there were no ties to the plaintiff and the Burglary units cases. There were two Alleged Burglarys. The First one is where the supposed victim did a visual Identification at a pawnshop of some items that were not his. The victim did not furnish proof of ownership, no distinct characteristics and not even a prior claim of missing any such Items. He was called By the Burglary unit and told the plaintiffs name and told that his Fingerprints were found in his home. The victim said he did not know the Plaintiff. The Detective's told the victim that the plaintiff pawned some stuff would he Like to meet them to see if he could Identify anything. They went to one pawnshop and viewed a whole Bunch of Jewelery. The victim told them "none of it is mine" They went to another shop and the victim said four brand new shop tools in the original boxes were his. Big Tools that are very obvious. The victim's previous Detailed List of missing items from his house Listed some tools But not one of the four Brand new in the boxes were on this previous List. The Detective's and the supposed victim act like he wasn't aware he was missing these huge shop tools and failed to notice when he was Listing missing other tools. The tools Belonging to the plaintiff's deceased grand father were Very Big and in their original Boxes. Even if By chance the victim had the four exact same tools missing in the Boxes he failed to say so until he was able to claim the Plaintiffs as his with no reciepts, serial numbers, Picture or distinct characteristics. The Second Burglary is a Broken piece of glass outside of a house that was Supposably another thumb print of the plaintiffs on it. Nothing was stolen from this residence. The Alleged victim pointed out his neighbor and his neighbor had cut's (abrasions) on his Arms consistant with Breaking a window.

    Plaintiff Believes that when all Internal Affairs and documents from the Task force created by Kelli Johnsons (Head of the Pima county attorneys criminal division) that on July 14th 2015 the county sheriff knew about Mr. Tarnows criminal misconducts, and at a Bare minimum he should of been put on some sort of Administrative leave, to keep him away from Investigations and Quite frankly evidence. They let him be in a position of Authority and left him on active Duty where Intergrity and Honesty are the Basis of his duties as a sworn officer. This Investigation of corruption should of Been done By a outside agency such as the Highway patrol as to they are above individual sheriffs or By the Federal Authority. The corruption was investigated by the same corrupt agency and Just the magnitude of the possibilities of how corrupt or Deep this really went rings alarm bells. Just Because Mr. Tarnow went to prison doesn't mean that he didn't turn the plaintiff's life up-side down and a reduced plea by the county is clearly a inappropriate remedy. Their is possible R.I.C. implications. The mass amount of Jewelery Mr. Tarnow provided to the plaintiff had to of come from some where. "The Dont worry about him he went to prison and we are gonna give you a reduced plea and leave the situation alone", according to the county of Pima. Says "it's okay our officer Blackmailed you and extorted you while being paid by us". The issue is dealt with leave it alone".

4-B

As of 9/15/17 the Plaintiff entered into a plea agreement for his other case's and the charges involved in this complaint were dismissed. So the charge's stemming from Incident #150629333 involving the Pima County Sheriff's Department and David J. Tarnow that were on the original indictment of CR-2015-2952-001 have been dismissed. The Plaintiff entered into a Alford plea of No contest for case's not pertaining to this civil rights complaint.

4-C

## COUNT III

1. State the constitutional or other federal civil right that was violated: 14th Amendment. Due process

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Black mail/extortion

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   The supporting facts stated in count one of this complaint and Plaintiff believes it redundant to recount the same exact facts and story in support of this count.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Extreme emotional distress, loss of wages/earnings and Defamation of character

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☐ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count III?   ☐ Yes   ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?   ☐ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.

If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.

5

## E. REQUEST FOR RELIEF

State the relief you are seeking:

$1,000,000.00 for Compensatory Relief and for a Inquiry into the personal relationship with Defendant David Tarnay for the Blackmail/extortion claims By an outside Agency not connected to the county of Pima

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 9/15/17
DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

6